## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**ANGELO R. RESCIGNO, SR.,**      :
**AS EXECUTOR OF THE ESTATE**
**OF CHERYL B. CANFIELD,**      :

           **Plaintiff**      :      **CIVIL ACTION NO. 3:16-85**

            **v.**      :      **(JUDGE MANNION)**

**STATOIL USA ONSHORE**      :
**PROPERTIES INC.,**

           : 

           **Defendant**

### <u>MEMORANDUM</u>

Currently before the court is a motion to intervene filed by Alan Marbaker, Carol Marbaker, Jerry L. Cavalier, and Frank K. Holdren ("Intervenors"). (Doc. 138). Also before the court is the defendant Statoil USA Onshore Properties, Inc.'s ("SOP") motion to strike the Intervenors' brief in opposition to a motion for preliminary approval of proposed settlement. (Doc. 114).[1]

---

[1] Throughout their motion and briefs, Intervenors refer to SOP as "Equinor USA Onshore Properties, Inc." or "EOP." (Doc. 139). Although Intervenors have not indicated as much, it appears that SOP has changed its name to "Equinor." "Statoil to Change Name to Equinor," EQUINOR (March 15, 2018), https://www.equinor.com/en/news/15mar2018-statoil.html; Fed.R.Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources who accuracy cannot reasonably be questioned."). Nevertheless, the court will continue to refer to the defendant as "SOP."

Case 3:16-cv-00085-MEM   Document 149   Filed 07/08/20   Page 2 of 20

For the reasons set forth below, the motion to intervene, (Doc. 138), will be **DENIED**, the motion to strike the Intervenors' brief in opposition, (Doc. 114), will be **GRANTED**, and the Intervenors' brief in opposition, (Doc. 111), will be **STRICKEN FROM THE RECORD**.

## I.    BACKGROUND[2]

Since the court set forth the complex factual background of this case in its prior memoranda and orders, it need not repeat it in detail herein. (Doc. 72; Doc. 73; Doc. 85; Doc. 86). Briefly, the plaintiff Angelo R. Rescigno, Sr. ("Rescigno") filed a putative class action complaint against SOP and other related entities on January 15, 2016, alleging seven causes of action primarily revolving around the royalty clause in a lease agreement he entered into with Cabot Oil Gas Corporation that was later acquired in part by SOP. By memorandum and order dated March 22, 2017, the court dismissed several of Rescigno's claims against SOP, as well as all claims against all defendants

---

[2] The former lead plaintiff in this case was Cheryl B. Canfield ("Canfield"). On September 13, 2019, Canfield's counsel filed a document notifying the court and parties that Canfield passed away on July 7, 2019. (Doc. 126). Canfield's counsel also filed a motion to substitute party, requesting that Canfield's son and executor of her estate, Rescigno, be substituted as the plaintiff in this matter. (Doc. 127). By order dated September 16, 2019, the court granted the motion to substitute. (Doc. 131). For the sake of simplicity, the court will refer to both Canfield and Rescigno interchangeably as "Rescigno."

other than SOP. (Doc. 72; Doc. 73). Rescigno moved for reconsideration, which this court denied by memorandum and order dated June 12, 2017. (Doc. 85; Doc. 86). In July 2017, after settlement discussions between Intervenors and SOP were terminated, Intervenors' counsel emailed Rescigno's counsel, offering to coordinate, but Rescigno declined. (Doc. 109-2, at 3).

On March 27, 2018, Rescigno filed a motion for preliminary approval of settlement. (Doc. 101). The proposed class includes two groups: the "Lease Form 29 Group" or "L-29" lessors, whose leases contain a specific royalty provision, and the "Other Lease Group," whose do not. (Doc. 137, at 9-10). On March 30, 2018, Intervenors filed a motion to consolidate this case with *Marbaker v. Statoil USA Onshore Properties, Inc.*, No. 3:17-cv-1528, (Doc. 108).

Intervenors, who possess leases with SOP that require the arbitration of disputes, (Doc. 144, at 5), originally commenced litigation against SOP in April 2015, with a class demand and complaint in arbitration, wherein they brought virtually identical claims as Rescigno has in the instant action. *See Marbaker v. Statoil USA Onshore Properties, Inc.*, No. 15-700 (M.D.Pa. Apr. 9, 2015). Intervenors sought to represent "all other lessors who entered into a lease in the Marcellus Region in which [SOP] has acquired an interest that, by its terms, requires royalties to be calculated based on 'revenue realized' or 'gross

- 3 -

proceeds' and who, within the past six years, have received royalty payments from [SOP]." *Marbaker v. Statoil USA Onshore Properties, Inc.*, No. 3:17-CV-1528, 2018 WL 4354522, at *1 (M.D.Pa. Sept. 12, 2018). Intervenors concurrently filed a declaratory action in this court to determine whether their lease agreements permitted class action arbitration. Subsequently, Intervenors executed a mediation protocol with SOP and agreed to dismiss their declaratory action. The matter was dismissed without prejudice on June 5, 2015. Mediation lasted for approximately two years until July 2017, when SOP purportedly ceased settlement discussions with Intervenors.

As noted, that same month, Intervenors' counsel reached out to Rescigno's counsel seeking to "coordinate," but Rescigno's counsel declined. (Doc. 109-2, at 4). In August 2017, Intervenors refiled their declaratory action, and the matter was assigned to the Hon. A. Richard Caputo. In March 2018, Intervenors filed a motion to consolidate, identical to the one in the instant case, which was denied on June 14, 2018. Ultimately, on September 12, 2018, Judge Caputo granted a motion by SOP to dismiss both counts. The Third Circuit recently affirmed the dismissal in *Marbaker v. Statoil USA Onshore Properties, Inc.*, 801 Fed. App'x 56, 59 (3d Cir. 2020). In doing so, the court noted,

> The Marbakers did not have to use a motion to consolidate as a back door into the *Canfield* suit.

- 4 -

> They could have easily protected their interests in
> that case by following the ordinary course: moving to
> intervene and objecting to the proposed settlement. .
> . . Or they could just opt out of the settlement,
> retaining their rights.

*Id.* at 62. After the Third Circuit's holding became final, this court, by separate

order, denied Intervenors' motion to consolidate.

Meanwhile, subsequent to filing the motion to consolidate in this case,

on April 10, 2018, Intervenors filed a brief in opposition to the motion for

preliminary approval of settlement. (Doc. 111). This prompted SOP to file the

present motion to strike the brief in opposition on April 16, 2018, (Doc. 114),

and a brief in support, (Doc. 115). Rescigno filed a memorandum of law in

support of SOP's motion to strike. (Doc. 123). Intervenors filed a brief in

opposition. (Doc. 121). SOP filed a reply brief. (Doc. 122).

Pertinent here, in November 2019, two members of the proposed class

in this case, Richard and Denise Kuffa ("Kuffas"), won an arbitration award

against SOP. Intervenors contend that the award conclusively determined that

SOP breached the plain language of the Kuffas' L-29 lease. The arbitrator

found in favor of the Kuffas and held that SOP must pay royalties using the

actual "gross proceeds" received at the point of sale. The award granted the

Kuffas $3,611.74 in damages plus penalty and statutory interest under the

lease terms, as well as declaratory and injunctive relief prohibiting SOP from

using its transfer price to pay royalties under the lease. (Doc. 138-7, at 2-3). By order dated January 23, 2020, the Philadelphia Court of Common Pleas confirmed the arbitration award. (Doc. 138-7, at 1).

On February 21, 2020, this court ordered the parties to file updated settlement documents reflecting the change in the lead defense counsel and lead plaintiff. (Doc. 136). After the parties complied, (Doc. 137), on March 10, 2020, Intervenors filed the present motion to intervene as plaintiffs, (Doc. 138), as well as a brief in support, (Doc. 139). SOP and Rescigno filed briefs in opposition, (Doc. 144; Doc. 145), and Intervenors filed a reply brief, (Doc. 148).

## II.  DISCUSSION

### a.  Motion to Intervene

Intervenors move to intervene pursuant to Federal Rule of Civil Procedure 24(a)(2), which provides, "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed.R.Civ.P. 24(a)(2).

In the absence of a federal statute conferring a right to intervene, as is the case here, Rule 24 authorizes a party to intervene as of right if the movant can establish (1) a timely application for leave to intervene has been filed; (2) a sufficient interest in the underlying litigation; (3) a threat that the interest will be impaired or affected by the disposition of the underlying action, and (4) that the existing parties to the action do not adequately represent the prospective intervenor's interests. *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3d Cir. 2005). The movant's failure to establish any factor is fatal. *Id.* "In the class action context, the second and third prongs of the Rule 24(a)(2) inquiry are satisfied by the very nature of Rule 23 representative litigation. Therefore, when absent class members seek intervention as a matter of right, the gravamen of a court's analysis must be on the timeliness of the motion to intervene and on the adequacy of representation." *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 314 (3d Cir.2005).

When analyzing the first timeliness prong, a court must consider the totality of the circumstances and evaluate three things: "(1) the stage of the proceedings; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Id.*

This court was presented with a similar issue in *Brennan v. Community Bank*, 314 F.R.D. 541 (M.D.Pa. 2016), wherein the proposed intervenors

initially filed an objection to the plaintiff's motion for preliminary approval of class settlement, which the court struck on motion by both the plaintiff and defendant. In the same order, the court granted the motion for preliminary approval of the class. The intervenors then filed a motion to intervene, which was opposed by both plaintiffs and defendants on the basis that the motion was untimely. The court agreed, observing that the intervenors were aware of the action and had the ability to file a motion for intervention for "over a year before they eventually filed the motion." *Id.* at 544.

Here, like the intervenors in *Brennan*, Intervenors argue that their motion is timely under *In re Community Bank of Northern Virginia*, where the court stated that "[t]he time frame in which a class member may file a motion to intervene challenging the adequacy of class representation must be at least as long as the time in which s/he may opt-out of the class." 418 F.3d at 314.

However, "Intervenors' strict interpretation of the Third Circuit text in *In re Community Bank of Northern Virginia* fails to take into account the totality of circumstances analysis and further fails to address the factual distinctions between *In re Community Bank of Northern Virginia* and the case at bar." *Brennan*, 314 F.R.D. at 544. "[A]ccording to the Third Circuit, an essential aspect of the timeliness analysis is when the intervenor became aware of the action." *Id.* Namely, "when analyzing timeliness in this context, 'the delay

should be measured from the time the proposed intervenor knows or should have known of the alleged risks to his or her rights or the purported representative's shortcomings.'" *Id.* (quoting *Benjamin v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 950 (3d Cir. 2012)).

Here, by their own admission, Intervenors were aware of this suit, including its purported shortcomings, by July 2017 at the latest, which was when SOP ceased settlement discussions with Intervenors and Intervenors sought to "coordinate" with Rescigno—a time period of over three years.[3] (Doc. 109-2). Intervenors have put forth no compelling reasons for this delay.

Further, as SOP points out, Judge Caputo, in his June 14, 2018 memorandum denying their motion to consolidate in the *Marbaker* case, suggested that Intervenors arguments would be "better suited for a motion to intervene, not a motion to consolidate." *Marbaker*, 2018 WL 2981341, at *3 n.4. Despite Judge Caputo's observation, Intervenors elected not to move to intervene until March 10, 2020.

It is also significant that Intervenors elected not to intervene after SOP filed its motion to strike Intervenors' brief in opposition to preliminary approval

---

[3] Notably, in the July 2017 email, Intervenors' counsel suggested they were aware of this case even earlier, stating, "We have been following developments in your Canfield v. Statoil case with interest." (Doc. 109-4, at 2).

of settlement in April 2018, since SOP's argument largely focused on the fact that Intervenors were not parties to the action and, given that they had not sought to intervene, were not entitled to be heard. In response, Intervenors, did not did not seek to intervene but, instead, attempted to justify their filing by arguing that they were "uniquely situated" to inform and assist this court in scrutinizing the proposed settlement. (Doc. 121, at 9).

Presently, instead of explaining their obvious delay in moving to intervene, Intervenors simply argue there was none. More particularly, they contend that, because they filed the motion approximately a month after the judicial confirmation of the Kuffas' arbitration award, there was no meaningful delay. It is unclear, however, why the confirmation of that award is significant with respect to Intervenors' legal interests in this case given that they continue to rely on many of the same arguments they have asserted since their first filing in this case. It is further unclear why the confirmed award is an appropriate benchmark for determining the timeliness of their motion where the Third Circuit has made clear that timeliness is measured from the time Intervenors "know or should have known of the alleged risks to [their] rights or the purported representative's shortcomings." *Benjamin*, 701 F.3d at 950. Once again, by their own admission, that was in July 2017. Thus, it appears that Intervenors are merely pointing to a recent development in one of many

similar arbitration cases against SOP as justification for their multi-year delay in seeking to intervene. Accordingly, the court finds that the lack of explanation for the delay weighs in favor of a finding of untimeliness.[4] *See Brennan*, 314 F.R.D. at 544 (finding the intervenors' delay of over a year weighed in favor of a fining of untimeliness).

With respect to the stage of the proceedings, the court agrees with Intervenors that this factor does not weigh in favor of a finding of untimeliness insofar as the case has not progressed beyond a motion for preliminary approval of class settlement. However, the court finds that the prejudice which would result to the parties does weigh in favor of a finding of untimeliness. As SOP observes, settlement discussions between the parties transpired for nearly a year and ultimately resulted in a settlement that appealed to both parties. Intervenors, if permitted to intervene, have evidenced their intent to significantly modify the settlement agreement that the parties reached after

---

[4] Relatedly, although they argue that the Kuffas' award preempts this action, Intervenors, whose members do not include the Kuffas, have not explained why they are better suited than Rescigno or the Kuffas themselves to raise this argument. Moreover, even if a motion to intervene were an appropriate forum in which to litigate whether an arbitration award is binding on this action, Intervenors fail to explain how the award, which pertained only to the Kuffas' L-29 lease, applies to the "Other Lease Group," whose members compose 93% of the class, and whose leases contain different language. (Doc. 137-3, at 4).

several years of litigation. As SOP notes, this will inevitably increase the parties' litigation costs, which they sought to curb through settlement. The court agrees that this factor is not insignificant in light of the time the parties have already spent litigating Intervenors' prior attempts to enter the case via the motions to consolidate and the opposition to the motion for preliminary approval. *See In re Safeguard Scientifics*, 220 F.R.D. 43, 47 (E.D.Pa. 2004) (holding the parties would be prejudiced by further delay in the proceedings and the additional attorneys' fees and legal expenses if an untimely motion to intervene were granted).

Additionally, class members will be prejudiced by the intervention because their recovery will be delayed and, ultimately, they may receive less favorable terms of settlement if Intervenors succeed in disrupting the current settlement agreement. *See Demchak Partners Ltd. Partnership v. Chesapeake Appalachia, LLC.*, No. 3:13-2289, 2014 WL 4955259, at *4 (M.D.Pa. 2014) (declining to grant intervention since "it would certainly prejudice the adjudication of the rights of the original parties, all of whom seek to settle the instant litigation," since it "would add unnecessary complexities that could cause undue delay in the resolution of th[e] case"). Indeed, this Circuit "favor[s] the parties reaching an amicable agreement and avoiding protracted litigation." *In re: Google Inc. Cookie Placement Consumer Privacy*

*Litigation*, 934 F.3d 316, 326 (3d Cir. 2019); *see also In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 784 (3d Cir. 1995) (noting that "[t]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved," and where the parties can "avoid[] the costs of litigating class status—often a complex litigation within itself").

Thus, in light of the prejudice to the parties and class member, Intervenors' early awareness of this action, and Intervenors' unjustified multi-year delay in moving to intervene, the court finds that, despite having filed the motion to intervene within the opt-out period, Intervenors' motion to intervene is nevertheless untimely under the totality of the circumstances.

Intervenors' failure to meet the timeliness prong is fatal to their motion. *See Liberty Mutual*, 419 F.3d at 220; *Mountain Top Condominium Assoc. v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995) ("Each of these requirements must be met to intervene as of right."). Even if they could establish timeliness, however, Intervenors' arguments regarding inadequate representation are similarly unpersuasive. Despite their criticisms of the class representatives, it appears that Intervenors themselves would be unable to represent the class given that their leases contain mandatory arbitration

clauses which SOP has indicated it intends to invoke should they be permitted to intervene.

Moreover, although Intervenors argue that they do not have L-29 leases, upon close review, Cavalier's lease as well as one of Holdren's leases contain the specific language that qualifies a lease as an L-29 lease pursuant to the proposed settlement. *Compare* Doc. 138-4, at 4, *and* Doc. 138-6, at 3-4, *with* Doc. 137, at 9-10. Thus, they would be adequately represented by the Stines, who are class representatives with L-29 leases. As to the Intervenors' leases that are not L-29 leases, even if the court were to find that the slight variations in their lease language were significant for purposes of recovery against SOP, Intervenors continue to have the option of opting out of the class and pursuing their allegedly stronger case against SOP outside of this action. *See Demchak*, 2014 WL 4955259, at *3 ("If the court grants preliminary approval of the class action settlement in the above-captioned matter, and if the proposed intervenors choose not to be bound by the terms of the settlement, they can opt out of the settlement class and reserve all of their rights to proceed with arbitration.").

Intervenors repeatedly argue that Rescigno's failure to include information about the Kuffas' award in the updated settlement documents demonstrates that they are *ipso facto* inadequately represented. However,

Intervenors fail to explain why this is so. *See In re Cmty. Bank*, 418 F.3d at 315 (noting that where, as in this case, the intervenors are a class members and have the same objective as the parties to the suit, there is a presumption of adequate representation). Intervenors' argument is particularly curious where the updated settlement documents were filed in response to the the court's February 21, 2020 order which stated only that the parties were to update the name of one of defense attorneys and the name of the lead plaintiff since those names would appear in the notice to be sent to class members. *See* Doc. 136.

Finally, with respect to their remaining arguments on inadequate representation, as in *Brennan*, much of Intervenors' focus is on their disagreement with aspects of the settlement agreement or with SOP's and Rescigno's litigation strategy, most of which was set forth in their brief opposing preliminary class approval. "The Third Circuit has clearly stated that dissatisfaction with a settlement cannot provide the basis for granting intervention as of right." *Brennan*, 314 F.R.D. at 546.

> To be clear, we are in no way suggesting that absent class members who merely express dissatisfaction with specific aspects of the proposed settlement or that attorneys (who, after finding one or more class members as clients, and wish to share in the forthcoming fee), have the right to intervene. The goals of Rule 23 would be seriously hampered if that were permitted.

*In re Cmty. Bank*, 418 F.3d at 315.

Accordingly, for all of these reasons, Intervenors' motion to intervene pursuant to Rule 24(a) is **DENIED**.

### b. Motion to Strike

Rule 12(f) of the Federal Rules of Civil Procedure generally governs motions to strike pleadings and provides, in part,

> (f) Motion to Strike. The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Fed.R.Civ.P. 12(f).

In its motion to strike Intervenor's brief in opposition to preliminary approval of the settlement, SOP asserts that Intervenors have failed to set forth a basis for why they, as nonparties,[5] are permitted to file a brief in opposition to the motion for preliminary approval of settlement. SOP observes that Local Rule 7.6 limits the filing of briefs in opposition to "[a]ny *party*," and argues that Intervenors are not a party to this action since they had not

---

[5] Significantly, as noted above, Intervenors did not move to intervene in this action until March 10, 2020. Thus, at the time they filed their brief in opposition, they were nonparties and, accordingly, the parties' arguments regarding SOP's motion to strike largely revolve around whether Intervenors are entitled to be heard.

attempted to intervene as of the time of the filing of their brief, nor are they class members given that the class has not yet been certified.

SOP argues that the court's reasoning in *Demchak* applies equally here. In *Demchak*, this court denied a motion to intervene holding that, to the extent the proposed intervenors desired to raise a substantive challenge to the settlement, they could object at the proper time—*i.e.*, at the fairness hearing after preliminary approval of class settlement[6]—or they could opt out of the class settlement and proceed to arbitration. *Demchak*, 2014 WL 4955259, at *4. Likewise, here, SOP argues that any objections Intervenors have to the proposed settlement can be fully addressed at the fairness hearing or by opting out and pursuing separate litigation.

Intervenors argue several points in response. First, they assert that they are "uniquely situated" to inform and assist this court in scrutinizing the proposed settlement and should be permitted to be heard now because courts

---

[6] Settlement of a class action occurs in two stages. First, the parties submit a proposed settlement to the court, which makes a preliminary fairness evaluation. If the court deems the proposed settlement preliminarily acceptable, the court will direct that notice be provided to all class members who would be bound by the proposed settlement in order to afford them an opportunity to be heard on, object to, and opt out of the settlement. In the second stage, after class members have been notified, the court holds a formal "fairness hearing" wherein class members may object to the settlement. *In re National Football League Players' Concussion Injury Litigation*, 301 F.R.D. 191, 197 (E.D.Pa. 2014); Fed.R.Civ.P.23(c)-(e).

are required to "independently scrutinize" the record. (Doc. 121, at 9). They contend that "nothing in Rule 23 or elsewhere prohibits courts from considering criticism of a settlement from objectors at the preliminary approval stage." (Doc. 121, at 12).

Next, Intervenors argue that their objections to the proposed settlement should be heard now because they would be bound by the injunction in the proposed preliminary settlement approval order. Specifically, they argue that they are pursuing various arbitration actions in state and federal court which would be derailed by the injunction. They contend that they did not receive notice from the parties of this proposed injunction in violation of Rule 65(a)(1), which provides that a court "may issue a preliminary injunction only on notice to the adverse party." Fed.R.Civ.P. 65(a)(1). Intervenors devote the remainder of their brief to address what they consider to be insufficiencies in the substance of the proposed settlement.

Here, having denied Intervenors' motion to intervene, the court will **GRANT** the motion to strike Intervenors' brief in opposition to the motion for preliminary approval since it is not properly before this court. As noted, at the time Intervenors' filed the brief in opposition, they were nonparties and, their subsequent motion to intervene having been denied, they remain so. As in *Demchak*, Intervenors have not provided a sufficient explanation as to why

their objections cannot be addressed after preliminary certification during the fairness hearing.

To the extent that Intervenors contend that preliminary approval is inappropriate because they have not received notice of the proposed injunction that would apply to them, this argument is unavailing. Given that Intervenors have identified the applicable portion of the proposed settlement that would impose an injunction on them, as well as offered argument on it, they are plainly on notice of the potential injunction in the proposed preliminary approval order. Once again, as with their other concerns about the proposed settlement, if Intervenors do not wish to be bound by its terms, they may simply opt out of the class. Accordingly, the motion to strike Intervenors' brief in opposition, (Doc. 114), is **GRANTED**, and the brief in opposition, (Doc. 111), will be **STRICKEN** from the record.

### III.    CONCLUSION

In light of the foregoing, Intervenors' motion to intervene, (Doc. 138), is

**DENIED**, SOP's motion to strike Intervenors' brief in opposition to the motion

for preliminary approval of settlement, (Doc. 114), is **GRANTED**. Intervenors'

brief in opposition, (Doc. 111), is **STRICKEN FROM THE RECORD**. An

appropriate order will follow.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: July 8, 2020**
16-0085-04

- 20 -