## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**ANGELO R. RESCIGNO, SR.,**        :
**AS EXECUTOR OF THE ESTATE**
**OF CHERYL B. CANFIELD,**          :

               **Plaintiff**       :        **CIVIL ACTION NO. 3:16-85**

        **v.**                      :              **(JUDGE MANNION)**

**STATOIL USA ONSHORE**             :
**PROPERTIES INC.,**
                                    :
               **Defendant**

## MEMORANDUM

Currently before the court is the plaintiff Angelo R. Rescigno, Sr.'s ("Rescigno") motion for preliminary approval of the parties' settlement agreement and appointment of class representatives and class counsel. (Doc. 101). Having reviewed and considered the motion, the brief in support of the motion, (Doc. 102), the parties settlement agreement, (Doc. 137), and notice of class settlement, (Doc. 137-2), and pertinent portions of the record of this case, Rescigno's motion is **GRANTED** and the court will preliminarily approve the parties' settlement agreement. The court will also preliminarily certify the class named in the parties' agreement, and appoint class counsel and class representatives.

# I.    BACKGROUND[1]

Rescigno owns property in the Marcellus Shale region within Pennsylvania. On May 6, 2008, Rescigno entered into an oil and gas lease with Cabot Oil & Gas Corporation ("Cabot Oil") for the exploration of oil and natural gas on his land. His lease was subsequently acquired, in part, by defendant Statoil USA Onshore Properties, Inc. ("SOP"). His dispute primarily revolves around the royalty clause in his lease agreement.

In his complaint, Rescigno challenged SOP's calculation of royalties. SOP's calculation is based on the sale of Rescigno's natural gas at the well, with that sale price calculated using an index price. SOP takes title to its in-kind percentage of the natural gas extracted at the well and immediately sells the natural gas to an affiliate, Statoil Natural Gas ("SNG"), pursuant to an agreement between the two entities. Under this agreement, SNG takes title

---

[1] As noted in this court's prior memoranda and orders, the former lead plaintiff in this case was Cheryl B. Canfield ("Canfield"). On September 13, 2019, Canfield's counsel filed a document notifying the court and parties that Canfield passed away on July 7, 2019, (Doc. 126). Canfield's counsel also filed a motion to substitute party, requesting that Canfield's son and executor of her estate, Rescigno, be substituted as the plaintiff in this matter. (Doc. 127). By order dated September 16, 2019, the court granted the motion to substitute. (Doc. 131). By order dated February 21, 2020, the court directed the parties to update the filings pertinent to the pending motion for preliminary approval to reflect, *inter alia*, the change in lead plaintiff. (Doc. 136). For the sake of simplicity, the court will refer to both Canfield and Rescigno interchangeably as "Rescigno."

to the raw product at the wellhead and then contracts with third parties for post-production services. SNG also contracts with pipeline companies to transport the natural gas through the interstate pipeline system and, ultimately, resells the final product to third-party buyers at receipt/delivery gates along the interstate system. Thus, SOP holds the lease interests for immediate sale and SNG serves as a marketing company, taking title at the well, transforming the product into a finished one, and then selling the post-production product to distribution companies, industrial customers, and power generators downstream.

At issue in this action is the agreement between SOP and SNG for the price of the raw natural gas at the wellhead where title is transferred from SOP to SNG. Their agreement fixes the price of the natural gas to a uniform hub price or index price for natural gas, regardless of whether the natural gas is ever delivered to that particular hub on the interstate pipeline system. These index prices are influential in natural gas markets and purport to represent the price of natural gas at different delivery points in the country. Around April 2010, SOP and SNG began using a chosen index price as opposed to what Canfield describes as an "actual negotiated price." (Doc. 1, at 10).

On January 15, 2016, Rescigno filed a putative class action complaint

against SOP, SNG, and the indirect parent of these entities, Statoil ASA. Rescigno brought six separate claims against SOP specifically. In his first claim, Rescigno alleged that SOP breached the express terms of the royalty clause in his lease agreement by using an index price. In his second claim, Rescigno alleged that SOP breached the lease by engaging in an affiliate sale with SNG. In his fourth claim, Rescigno alleged that SOP breached the implied covenant of good faith and fair dealing in the lease by engaging in an affiliate sale. In this claim, he also alleged that SOP "had an obligation to use reasonable best efforts to market the gas to achieve the best price available." (Doc. 1, at 17). The court construed this fourth claim as a duty of good faith claim and/or a duty to market claim. Rescigno also alleged civil conspiracy (third claim) and unjust enrichment (fifth claim). He also requested an accounting as a specific form of relief (seventh claim).

On June 9, 2016, SNG filed a motion to dismiss Rescigno's complaint. (Doc. 25). Also on June 9, 2016, SOP and Statoil ASA, collectively, filed a motion to dismiss. (Doc. 31). By memorandum and order dated March 22, 2017, the court dismissed all but one of Rescigno's claims against SOP, as well as all claims against SNG and Statoil ASA. (Doc. 72; Doc. 73). Rescigno moved for reconsideration, which this court denied by memorandum and order dated June 12, 2017. (Doc. 85; Doc. 86).

On March 27, 2018, Rescigno filed the present motion for preliminary approval of settlement, (Doc. 101), and a brief in support, (Doc. 102).[2]

## II.   TERMS OF THE SETTLEMENT AGREEMENT

The settlement agreement, which was originally attached to the motion for preliminary approval, (Doc. 102-1, at 1-38), was updated by order of the court on March 6, 2020, (Doc. 137), to reflect the change in lead plaintiff and defense counsel. Attached to the settlement agreement is the notice of proposed settlement, (Doc. 137-2), a plan of administration and distribution, (Doc. 137-3), and a proposed final judgment and order of dismissal with prejudice, (Doc. 137-4). Together, the documents contain the following pertinent provisions.

---

[2] Relatedly, March 30, 2018, Alan Marbaker, Carol Marbaker, Jerry L. Cavalier, and Frank K. Holdren ("Marbaker Plaintiffs"), plaintiffs in a related action, *Marbaker v. Statoil USA Onshore Properties, Inc.*, No. 3:17-cv-1528, filed a motion to consolidate this case with theirs, (Doc.108), and, subsequently, a brief in opposition to the present motion for preliminary approval of the parties' settlement agreement, (Doc. 111). Both Canfield and SOP opposed the motion to consolidate. (Doc. 112; Doc. 113). SOP additionally filed a motion to strike the Marbaker Plaintiffs' brief in opposition to the motion for preliminary approval. (Doc. 114). By separate memorandum and order, this court denied the motion to consolidate and granted SOP's motion to strike the Marbaker Plaintiffs' brief in opposition.

### a. Settlement Groups and Distribution

The settlement agreement identifies the class as "Royalty Owners in Northern Pennsylvania[3] who have entered into oil and gas leases, regardless of the type of lease, that provide that the Royalty Owner is to be paid Royalties and to whom [SOP] has (or had) an obligation to pay Royalties on production attributable to [SOP]'s working interest." ([Doc. 137, at 5](#)).

The settlement agreement divides all plaintiffs and named plaintiffs into two groups. The first group, termed the "Lease Form 29 Group," includes those class members whose leases contain the following provision governing valuation of royalty on natural gas:

> To pay Lessor on gas and casinghead gas produced from the leased premises, percentages of proceeds . . . based on: (1) the Gross Proceeds paid to Lessee from the sale of such gas and casinghead gas when sold by Lessee in an arms-length sale to an unaffiliated third party, or (2) the Gross Proceeds,

---

[3] Northern Pennsylvania is defined in the settlement agreement as

> The area of Pennsylvania in which [SOP] owns working interests in oil and gas leases and from which it produces and sells Natural Gas production for delivery into Rome, Liberty, Allen, Meadow, Warrensville, Seely, Canoe Run, Tombs Run, and PVR Wyoming gathering systems and includes oil and gas leases owned in whole or in part by [SOP] in the following counties: Bradford, Lycoming, Sullivan, Susquehanna, and Wyoming.

([Doc. 137, at 10](#)).

> paid to an Affiliate of Lessee, computed at the point
> of sale, for gas sold by lessee to an Affiliate of Lessee
> . . . .

(Doc. 137, at 9-10). The Lease Form 29 Group comprises approximately 7% of the class and the settlement agreement provides that they will be allocated 18% of the net settlement fund. (Doc. 137-2, at 7).

The second group, termed the "Other Lease Group," includes those class members with interests under all other lease forms. The Other Lease Group comprises approximately 93% of the class and the settlement agreement provides that they will be allocated approximately 82% of the net settlement fund. (Doc. 137-3, at 4).

SOP has agreed to pay $7,000,000, plus interest, to settle all claims relating to SOP's use of the index pricing methodology as the basis for calculation of royalties. The class has agreed to a release which will permit SOP to continue using the index pricing methodology to calculate royalties for a period of five years from the effective date of the settlement for the Other Lease Group. However, for those in the Lease Form 29 Group, SOP agrees to base the royalties on the resale price and to no longer use the index pricing methodology going forward. Upon final approval of the settlement, SOP will make this change effective retroactively to the first full production month after preliminary approval of the settlement. (Doc. 137, at 7, 17-18).

Ultimately, all class members who are eligible and participate in the agreement will release all claims asserted in the complaint or that relate to the methodology of determining royalties paid on natural gas produced from the class members' wells. (Doc. 137, at 23).

### b. Notice and Final Check Distribution

The settlement agreement indicates that SOP will provide the settlement administrator the necessary records and information to prepare a list of class members. (Doc. 137, at 16).

Within fourteen days of this court's order preliminary approving the settlement agreement, the settlement administrator will mail copies of the settlement notice to all members and post notice on its website at www.statoilsettlement.com. If a notice is returned, the settlement administrator will take reasonable steps to obtain a valid address and re-mail the notice. (Doc. 137, at 25).

One year after final approval of the settlement, the settlement administrator will determine the amount of all unclaimed checks and the unclaimed monies will be donated to a non-profit organization agreed to by the parties—to wit, the Environmental Defense Fund. (Doc. 137, at 25; Doc. 137-3, at 6-7).

### c. Fees, Costs, and Service Awards

The settlement administrator has been identified as Gilardi & Co. LLC ("Gilardi"). The settlement agreement indicates that up to $250,000 of the settlement fund may be used by class counsel to pay notice and administration costs. After the court has entered final judgment in this case, class counsel may pay all further reasonable notice and administration costs without further order of the court. (Doc. 137, at 19; Doc. 137-1, at 6).

The settlement agreement also indicates that the lead plaintiffs may submit an application for incentive awards for representing the class in the prosecution of this action. The notice states that the incentive awards will not exceed $5,000 each. (Doc. 137-2, at 10).

Class counsel will receive attorneys' fees in the amount of 25% of the settlement amount and expenses not to exceed $125,000, plus interest on both amounts. Class counsel will file a separate motion for approval of attorneys' fees and costs prior to the court's final fairness hearing. The settlement agreement provides that the allowance or disallowance by the court of any applications for attorneys' fees or expenses or incentive awards are not part of the settlement and any order regarding these will not operate to terminate the settlement or affect the finality of a judgment approving the settlement. (Doc. 137, at 28; Doc. 137-2, at 9).

### III. STANDARD

#### a. Preliminary Certification of a Rule 23 Class for Settlement

Federal Rule of Civil Procedure 23(d) enables a court to certify a Rule 23 class for settlement purposes. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 794 (3d Cir. 1995). When presented with a request for preliminary certification of a class and settlement of that class simultaneously, the court should be mindful of the requirements of Rule 23(e). Rule 23(e) allows a settlement of a Rule 23 certified with class with court approval only. Fed.R.Civ.P. 23(e). Rule 23(e) also directs the court to send notice to all class members who would be bound by the settlement. Fed.R.Civ.P. 23(e)(1).

The process for certification of a settlement class is not specified in the rule. Courts are often guided by the Judicial Center's Manual for Complex Litigation (Fourth) in directing these type of proceedings. *See In re Nat'l Football League Players Concussion Litig.*, 775 F.3d 570, 580-81 (3d Cir. 2014). Looking to the Manual for Complex Litigation, the Third Circuit has approved of courts making a preliminary finding that the proposed class meets the requirements of Rule 23. *Id.* at 582 (citing Manual for Complex Litigation §21.632 (4th ed. 2004)). This preliminary determination allows the court to direct notice to the proposed class. "The preliminary determination of

a proposed class is therefore a tool for settlement used by the parties to fairly and efficiently resolve litigation." *Id.* at 583. A final certification can then be issued at a later date, after notice has been provided to those included in the proposed settlement class. *Id.* at 583.

### b. Preliminary Approval of Class Action Settlement Agreements

Preliminary approval of a class action settlement "establishes an initial presumption of fairness when the court finds that (1) the negotiations occurred at arms'-length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a fraction of the class objected." *In re Gen. Motors Corp.*, 55 F.3d at 785. A preliminary approval, however, is just that, preliminary. It is not a finding that definitively determines the elements of fairness, adequacy, and reasonableness needed for final approval of class action settlements under *Girsch v. Jepsen*, 521 F.2d 153 (3d Cir. 1975).

## IV. DISCUSSION

### a. Preliminary Certification of the Class

The settlement class included in the parties' settlement agreement appears, upon preliminary review, to meet the requirements of Rule 23. In

order to certify a settlement class under Federal Rule of Civil Procedure 23, the court must find that the settlement class satisfies the requirements of Rule 23. *In re Gen. Motors Corp.*, 55 F.3d at 799. These requirements include that of numerosity, commonality, typicality, and adequacy of representation. Fed.R.Civ.P.23(a).

In addition, the proposed class must meet one of the requirements of Rule 23(b). Rescigno, here, seeks certification under Rule 23(b)(3), which allows certification where "questions of law or fact common to class members predominate over any questions affecting only individual members" and where the court finds that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). These two requirements are commonly referred to as predominance and superiority. *In re Constair Int'l Inc. Sec. Litig.*, 585 F.3d 774, 780 (3d Cir. 2009).

The class here appears to satisfy the numerosity requirement since it includes approximately 13,900 individuals, and therefore joinder of all these plaintiffs would be impractical. As to commonality, there are factual issues common to all class members regarding whether SOP used an index pricing methodology to calculate royalties. Additionally, the proposed class representatives' claims are typical of the class members' claims such that "the

action can be efficiently maintained" and the class representatives have incentives that align with the class members. *Neal v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994). Although the specific language of the individual leases may vary, the claim of the class representatives, like those of the putative class members, is that SOP should not have used the index pricing methodology and, therefore, the requirement of typicality is present.

With regard to the adequacy of representation, the court finds that both the proposed class representatives and class counsel satisfy this requirement. The proposed class representatives are Rescigno and Donald Keith Stine and Mary Stine ("the Stines"). Upon review of their declarations, (Doc. 105; Doc. 106), the court finds that the class members' interests are adequately represented by Rescigno and the Stines. Ninety-three percent of the leases at issue, like Rescigno's, require royalties to be paid on revenue realized. The remaining leases contain a provision with language more favorable to the royalty owners. The Stines' lease contains this favorable provision and, thus, the Lease Form 29 Group has adequate representation in the Stines. Finally, Rescigno and the Stines have attested that they understand their fiduciary responsibilities and will adequately represent the class members.

- 13 -

As to counsel, the court is satisfied that class counsel will fairly and adequately represent the interests of the class pursuant to Rule 23(g)(4). The class is represented by Francis P. Karam of the law firm Robbins Gellar Rudman & Dowd LLP, who provided a declaration to the court, (Doc. 104), along with the firm's resume, (Doc. 104-2). Attorney Karam has had prior experience in representing clients in oil and gas matters both before this court and in state court. Robbins Gellar Rudman & Dowd LLP has litigated numerous actions against oil and gas companies in both state and federal courts around the country. Attorney Karam's co-counsel, Douglas Clark of the Clark Law Firm, P.C, and John F. Harnes of law firm Chitwood Harley Harnes LLP, also provided their firms' resumes. (Doc. 104-3; Doc. 104-4).

In reviewing these documents, the court is satisfied that the attorneys in this action have diligently investigated the potential claims and have experience in handling class action litigation, as well as knowledge of applicable law and, thus, the they are able to fairly and adequately represent the interests of the class. *See* Fed.R.Civ.P. 23(g).

The superiority and predominance requirements of Rule 23(b)(3) also appear to be satisfied. Treatment of this litigation as a class action is superior to resolution through hundreds of separate, individual proceedings throughout Pennsylvania. Class treatment enhances judicial efficiency and

will likely maximize recovery. Predominance is also present as the class representatives' and class members' claims involve the same legal theory and are based on the payment of royalties using an index pricing methodology in similarly-worded, if not identically-worded, contracts.

In light of the above, the court will preliminarily certify the class for settlement purposes and for the purpose of sending notice under Rule 23(e). The court reserves its finding on final certification until after the fairness hearing. A more thorough certification analysis will be provided after the class members have been provided with notice of the action and have had an opportunity to object to the settlement.

### b. Preliminary Approval of the Settlement Agreement

The court will also preliminarily approve the settlement agreement. (Doc. 137). In making this determination, the court has considered the following: (1) the negotiations occurred at arms'-length; (2) there was sufficient discovery; and (3) the proponents of the settlement are experienced in similar litigation. *In re Gen. Motors Corp.*, 55 F.3d at 785.

As Rescigno notes in his brief, the settlement is the result of arms'-length negotiations that followed significant contested litigation on the defendants' two motions to dismiss, which allowed class counsel to test and evaluate their case in light of the defendants' arguments and the court's

decisions. The litigation also permitted a sufficient exchange of discovery that would allow the parties to come to a fair agreement in this particular royalties dispute with SOP. Attorney Karam's declaration indicates that counsel conducted a thorough investigation into this action both prior to and after being retained by Rescigno in early 2016, which included legal and factual research, as well as communication with SOP. Settlement discussions began in mid-2017 and the parties executed the present settlement agreement on March 26, 2018. Finally, as noted above, the court has found that class counsel are experienced in this type of litigation.

### c. Proposed Schedule and Notice

Lastly, the court will preliminarily approve Gilardi as the settlement administrator to proceed with the settlement process agreed to by the parties and as set forth in their proposed schedule for completing settlement. (Doc. 102, at 25). The court will also direct notice to the class members as set forth in the parties proposed notice. (Doc. 137-2).

The court finds that the proposed notice to class members satisfies the requirements of Rule 23(c)(2)(B) and Rule 23(e)(1). (Doc. 137-2). The form advises the members about the settlement and release and how to object, comment, or opt-out. It also provides the contact information of class counsel in the event a class member has questions.

In light of these circumstances, the court finds that the proposed notice is the best practicable form of notice to inform the members of the settlement and to proceed with the settlement for all claims in a timely and efficient manner.

## V.    CONCLUSION

Accordingly, the motion for preliminary approval of the parties' settlement agreement, (Doc. 101), is **GRANTED**. The parties' settlement agreement is preliminarily approved and the class identified in the agreement is preliminarily certified as a Rule 23 class. A final fairness hearing will be scheduled by the court. In accordance with the parties proposed schedule, 35 days prior to the final fairness hearing, the parties shall file motions in support of final approval. An appropriate order will issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: July 8, 2020**
16-0085-05

- 17 -