# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANGELO R. RESCIGNO, SR.,** : | |
| **AS EXECUTOR OF THE ESTATE** | |
| **OF CHERYL B. CANFIELD,** : | |
| Plaintiff : | CIVIL ACTION NO. 3:16-85 |
| v. : | (JUDGE MANNION) |
| **STATOIL USA ONSHORE** : | |
| **PROPERTIES INC.,** | |
| : | |
| Defendant | |

## MEMORANDUM

Presently before the court is a motion to stay filed by Alan Marbaker, Carol Marbaker, Jerry L. Cavalier, and Frank K. Holdren ("Intervenors"). (Doc. 155). For the reasons set forth below, the motion will be **DENIED**.

### I.   BACKGROUND[1]

Since the court set forth the complex factual background of this case in its prior memoranda and orders, it need not repeat it in detail herein.

---

[1] The former lead plaintiff in this case was Cheryl B. Canfield ("Canfield"). On September 13, 2019, Canfield's counsel filed a document notifying the court and parties that Canfield passed away on July 7, 2019. (Doc. 126). Canfield's counsel also filed a motion to substitute party, requesting that Canfield's son and executor of her estate, Rescigno, be substituted as the plaintiff in this matter. (Doc. 127). By order dated September 16, 2019, the court granted the motion to substitute. (Doc. 131). For the sake of simplicity, the court will refer to both Canfield and Rescigno interchangeably as "Rescigno."

## II.     STANDARD

"The power to stay is incidental to the power inherent in every court to dispose of cases so as to promote their fair and efficient adjudication." *United States v. Breyer*, 41 F.3d 884, 893 (3d Cir.1994). In determining whether to grant a motion to stay, courts should consider: "(1) whether the appellant has made a strong showing of the likelihood of success on the merits; (2) will the appellant suffer irreparable injury absent a stay; (3) would a stay substantially harm other parties with an interest in the litigation; and (4) whether a stay is in the public interest." *In re Revel AC, Inc.*, 802 F.3d 558, 565 (3d Cir.2015); *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir.1991).

> The most critical factors, according to the Supreme Court, are the first two: whether the stay movant has demonstrated (1) a strong showing of the likelihood of success and (2) that it will suffer irreparable harm— the latter referring to harm that cannot be prevented or fully rectified by a successful appeal. Though both are necessary, the former is arguably the more important piece of the stay analysis.

*In re Revel AC*, 802 F.3d at 568 (internal quotation marks and citations omitted).

After the movant has satisfied the first two factors, the court considers the harm to the opposing party and weighs the public interest. *Id.* at 569. Thus, the court weighs:

> the likely harm to the movant (absent a stay) (factor two) against the likely irreparable harm to the stay opponent(s) if the stay is granted (factor three). This is called the balancing of harms or balancing of equities. We also take into account where the public interest lies (factor four)—in effect, how a stay decision has consequences beyond the immediate parties.

*Id.* (internal quotation marks omitted).

### III.   DISCUSSION

As Intervenors observe, an order denying a motion to intervene is generally a final appealable order.[2] *See, e.g.*, *McKay v. Heyison*, 614 F.2d 899, 903 (3d Cir.1980). However, it does not appear that Intervenors are likely to succeed on the merits. As the court in *Harris v. Pernsley* observed,

> [I]t is difficult for a district court to consider the likelihood of an appellant's success on appeal. This consideration necessitates a prediction whether the district court was in error. It would be highly unusual for a district court judge to come to this conclusion immediately after a decision on the merits because the decision [being appealed] represents the judge's reasoned decision as to what was legally correct.

---

[2] Rescigno devotes some of his brief to an argument that the court's July 9, 2020 order is not, in fact, final and thus not appealable. Because the appeal of that order has divested this court of jurisdiction as it relates to that order, and because the Third Circuit has recently directed parties to brief the issue of whether an order denying Intervenors' motion to intervene is a final, appealable order, the court declines to engage in any further analysis of the matter.

654 F.Supp. 1057, 1060 (E.D.Pa.1987). In making this determination, however, the court may consider such things as whether there has been an intervening change in law or whether the decision was based on unsettled precedent or involved a novel area of law. *See, e.g.*, *id.*

Here, in making the determination on whether Intervenors were permitted to intervene as of right, the court found that Intervenors had failed to meet the threshold requirement of timeliness, given their significant delay in seeking intervention. The court additionally noted that, even if Intervenors had done so, their motion would have failed because their arguments regarding inadequacy of representation were unavailing. As in *Harris*, this court's decision did not involve a novel area of law, but instead was based upon well-settled law in the Third Circuit. Additionally, there has been no significant intervening precedent on the issue of timeliness of intervention since the court issued its decision. Therefore, insofar as the court considered the relevant factors in reliance on long-standing precedent and articulated its reasons at length, "[t]here does not seem to be a reasonable possibility that its decision will be overturned on appeal." *Id.* Accordingly, the court finds that Intervenors have not made a strong showing on their likelihood of success on the merits and, thus, this factor weighs in favor of the denial of a stay.

Next, the court considers whether Intervenors will suffer irreparable harm in the absence of a stay. To show irreparable harm, the movant must "demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir.1994) (internal quotation marks omitted).

Intervenors argue they will be harmed because, in light of the October 2020 fairness hearing, they will likely be forced to decide whether to opt out of the settlement before their appeal is decided. Intervenors, however, do not develop this argument by explaining how precisely this will irreparably harm them. Intervenors also identify more general harm, unspecific to them, that may occur in the absence of a stay. Namely, Intervenors contend that, in light of the fact that a Third Circuit decision prior to the fairness hearing is unlikely, any "final" disposition by this court at the fairness hearing "would in effect be advisory until the Third Circuit rules on the central issue of adequacy and the objections to preliminary approval." (Doc. 156, at 18). Intervenors also cite the expense of preparation and discovery for the fairness hearing, arguing a stay will permit them to avoid these expenses until the issues are "clarified and resolved." (Doc. 156, at 19).

The defendant, by contrast, argues Intervenors will not be harmed by what Intervenors consider to be a poorly-negotiated settlement in light of the

option they have always retained: opt out and exercise their arbitration rights. Rescigno argues that Intervenors will suffer, at worst, minimal harm if they have to wait "mere months" until final judgment on their appeal. Rescigno reasons that "[i]t makes little sense to delay approval of the settlement for likely six months or longer, merely to prevent [Intervenors] from having to wait three months [until after the settlement is approved] to lodge their appeal from a final judgment." (Doc. 162, at 7).

Here, the court finds that Intervenors have not sufficiently demonstrated irreparable harm. Regardless of whether Intervenors are ultimately permitted to intervene, they acknowledge that they are entitled to discovery prior to the fairness hearing and have suggested that they intend to engage in it. Intervenors fail to explain with any specificity how their discovery costs will be significantly impacted by the Third Circuit's ruling on their appeal. Further, even if Intervenors had shown that their discovery costs would be increased significantly absent a ruling on their appeal, that harm would not be considered irreparable. See *Minard Run Oil Co. v. U.S. Forest Service*, 670 F.3d 236, 255 (3d Cir.2011) ("As a general matter, a purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement."). Additionally, having filed a motion to intervene and having appealed the denial of that motion, Intervenors have indicated their intent to participate at the fairness

hearing. Intervenors, however, do not explain how their ability to object at the fairness hearing would be impacted by the appeal insofar as they will have the same right to be heard whether they remain class members or, in the event of a favorable ruling by the Third Circuit, become parties.

With respect to the harm to the parties, Intervenors argue that, in light of the already significant amount of time this case has been pending, a further delay will not unduly prejudice the parties. As the parties note, however, they will indeed suffer injury if a stay is granted. Staying the action for an unknown period of time, which Intervenors estimate is "unlikely to be more than a year," (Doc. 156, at 19), means that the parties must again wait in limbo while yet another intervening matter is settled, which may ultimately diminish the going-forward value of the settlement for class members. *See Barnard v. Lackawanna County*, 2016 WL 362424, at *3 (M.D.Pa. Jan. 29, 2016). As stated in this court's memorandum on the motion to intervene, any further delay in the settlement would be prejudicial to the parties, particularly when taking into account the time and expense the parties have already spent litigating Intervenors' prior filings in this case, as well as the length of time the matter has been pending. (Doc. 149, at 12).

Finally, the court must consider public's interest and the promotion of judicial economy that would result by granting the stay. "Generally speaking,

...

the public is best served by enforcing negotiated settlements and by allowing long-running civil actions to come to their final conclusion." *Bridgeport Guardians, Inc. v. Delmonte*, 620 F.Supp.2d 337, 344 (D.Conn.2009), *rev'd on other grounds*, 602 F.3d 469 (2d Cir.2010). Here, however, Intervenors argue that, without a stay, settlement funds may be wasted if the notices are sent out or the settlement is approved, and the Third Circuit's ruling later requires them to be amended.

While it is true that the Third Circuit's ruling has the potential to impact the notices or final approval of settlement, to the extent this factor weighs in favor of a stay, it, standing alone does not justify a stay. *CTF Hotel Holdings, Inc. v. Marriott Intern., Inc.*, 381 F.3d 131, 139 (3d Cir.2003) (noting "efficiency does not, by itself, allow a federal court to refuse to exercise its jurisdiction"). This is particularly so where Intervenors have not made a strong showing on the likelihood of success on the merits or adequately demonstrated irreparable harm—the two most "critical" pieces of the stay analysis. *See In re Revel AC*, 802 F.3d at 568.

As the Third Circuit has noted, "[a] stay is an extraordinary measure," requiring "compelling reasons for its issuance." *Breyer*, 41 F.3d at 893. In the present case, the court finds that, upon weighing the relevant factors, the balance weighs in favor of denying the instant motion for a stay.

Accordingly, for the foregoing reasons, Intervenors' motion to stay, (Doc. 155), is **DENIED**. An appropriate order shall follow.

          s/ *Malachy E. Mannion*
          **MALACHY E. MANNION**
          **United States District Judge**

**DATE: August 4, 2020**
16-0085-06