UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGELO R. RESCIGNO, SR., Executor of the Estate of CHERYL B. CANFIELD, | ) ) ) | Case No. 3:16-cv-00085-MEM |
| | ) ) | LEAD PLAINTIFF'S MEMORANDUM OF LAW IN |
| Plaintiff, | ) ) | SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL |
| vs. | ) ) | OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION |
| STATOIL USA ONSHORE PROPERTIES INC., STATOIL NATURAL GAS LLC and STATOIL ASA, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................1

I.   FACTUAL AND PROCEDURAL BACKGROUND OF THE
     ACTION ................................................................................................2

II.  SETTLEMENT TERMS ........................................................................3

III. THE SETTLEMENT WARRANTS THIS COURT'S FINAL
     APPROVAL ...........................................................................................4

     A.   The Settlement Satisfies Each of the Rule 23(e)(2) Factors .................7

          1.   Lead Plaintiff and Lead Counsel Have Adequately
               Represented the Class ...................................................7

          2.   The Settlement Negotiations Were Conducted at Arm's
               Length ...........................................................................9

          3.   The Settlement Is Adequate Considering the Costs,
               Risks, and Delay of Trial and Appeal ........................................10

               a.   The Costs, Delays and Complexities of Further
                    Litigation...........................................................................10

               b.   The Risks of Establishing Liability Weighs in
                    Favor of Final Approval (*Girsh* Factor 4) ......................12

               c.   The Risk of Establishing Damages (*Girsh*
                    Factor 5)..........................................................................13

               d.   The Settlement Is More than Adequate in Light of
                    All the Attendant Risks of Litigation ..............................14

          4.   The Settlement Satisfies the Remaining Rule 23(e)(2)
               Factors............................................................................16

     B.   The Settlement Satisfies the Remaining *Girsh* Factors ......................17

          1.   Settlement..........................................................................17

          2.   Risks of Maintaining Class Action Status Through Trial.........17

**Page**

       3.     The Settlement Is Reasonable in Light of the Ability of Defendants to Withstand a Greater Judgment ...........................19

    C.    The Proposed Settlement Satisfies the *Prudential* Considerations ..................................................................................20

IV.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION .......20

V.    CONCLUSION....................................................................................21

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alves v. Main*,
No. 01-789 (DMC), 2012 WL 6043272
(D.N.J. Dec. 4, 2012), *aff'd*, 559 F. App'x 151 (3d Cir. 2014)...........................4

*Brown v. TrueBlue, Inc.*,
No. 1:10-CV-0514, 2011 WL 5869773
(M.D. Pa. Nov. 22, 2011) .................................................................................18

*Chen-Oster v. Goldman, Sachs & Co.*,
449 F. Supp. 3d 216 (S.D.N.Y. 2020) ..............................................................19

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*,
No. 12-5275, 2015 WL 5097883
(D.N.J. Aug. 31, 2015)................................................................................5, 20

*DeSantis v. Snap-On Tools Co., LLC*,
No. 06-cv-2231 (DMC), 2006 WL 3068584
(D.N.J. Oct. 27, 2006)........................................................................................9

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010) ...............................................................................4

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) .......................................................................*passim*

*Heritage Resources, Inc. v. NationsBank*,
939 S.W.2d 118 (Tex. 1996) ............................................................................12

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ....................................................................7, 17, 19

*In re Chambers Dev. Sec. Litig.*,
912 F. Supp. 822 (W.D. Pa. 1995)....................................................................12

*In re Chicken Antitrust Litig.*,
810 F.2d 1017 (11th Cir. 1987) ........................................................................20

**Page**

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ...........................................................4, 12, 13, 14, 19

*In re Merck & Co. Inc. Vytorin ERISA Litig.*,
No. 08-CV-285 (DMC), 2010 WL 547613
(D.N.J. Feb. 9, 2010) .........................................................................................14

*In re New Jersey Tax Sales Certs. Antitrust Litig.*,
No. 12-1893 (MAS)(TJB), 2016 WL 5844319
(D.N.J. Oct. 3, 2016)..........................................................................................15

*In re NFL Players Concussion Injury Litig.*,
821 F.3d 410 (3d Cir. 2016) ..............................................................................17

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997) ..................20, 21

*In re Par Pharm. Sec. Litig.*,
No. 06-3226 (ES), 2013 WL 3930091
(D.N.J. July 29, 2013).........................................................................................14

*In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ..............................................................................14

*In re Schering-Plough/Merck Merger Litig.*,
No. 09-CV-1099 (DMC), 2010 WL 1257722
(D.N.J. Mar. 26, 2010).........................................................................................7

*In re Titanium Dioxide Antitrust Litig.*,
962 F. Supp. 2d 840 (D. Md. 2013)....................................................................18

*In re ViroPharma, Inc. Sec. Litig.*,
No. 12-2714, 2016 WL 312108
(E.D. Pa. Jan. 25, 2016) .......................................................................................7

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) ..............................................................4, 7, 9, 19

**Page**

*Johnson v. BLC Lexington, SNF, LLC*,
    No. 5:19-064-DCR, 2020 WL 3578342
    (E.D. Ky. July 1, 2020) ................................................................................19

*King v. Capital One Bank (USA), N.A.*,
    No. 3:11-CV-00068, 2012 WL 5570624
    (W.D. Va. Nov. 15, 2012)..............................................................................18

*Potts v. Chesapeake Exploration, L.L.C.*,
    760 F.3d 470 (5th Cir. 2014) ....................................................................11, 12

*Schuler v. Meds. Co.*,
    No. 14-1149 (CCC), 2016 WL 3457218
    (D.N.J. June 24, 2016) ................................................................................7, 8

*Shubert v. Wells Fargo Auto Fin., Inc.*,
    No. 08-3754 (NLH), 2008 WL 5451021
    (D.N.J. Dec. 31, 2008) ..................................................................................18

*Sullivan v. DB Indus., Inc.*,
    667 F.3d 273 (3d Cir. 2011) ..........................................................................20

*Tan v. Grubhub, Inc.*,
    No. 15-cv-05128-JSC, 2016 WL 4721439
    (N.D. Cal. July 19, 2016)...............................................................................19

*Walsh v. Great Atl. & Pac. Tea Co., Inc.*,
    726 F.2d 956 (3d Cir. 1983) ......................................................................20, 21

**Page**

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
    Rule 23(e)...............................................................................................7
    Rule 23(e)(2)....................................................................................*passim*
    Rule 23(e)(2)(A) .....................................................................................7
    Rule 23(e)(2)(B).......................................................................................9
    Rule 23(e)(2)(C)(i)..................................................................................10
    Rule 23(e)(2)(C)(ii)-(iv) ........................................................................16
    Rule 23(e)(2)(D) .....................................................................................16
    Rule 23(e)(3)............................................................................................6

## SECONDARY AUTHORITIES

*Manual for Complex Litigation*
    §30.41 (3d ed. 1995) ...............................................................................4

## PRELIMINARY STATEMENT

Lead Plaintiff Angelo R. Rescigno Sr., Executor of the Estate of Cheryl B. Canfield ("Lead Plaintiff") submits this memorandum of law in support of his motion for final approval of class action settlement set forth in the Stipulation and Agreement of Settlement dated March 6, 2018 (the "Settlement").[1]  Following an extensive investigation into the claims alleged and arm's-length negotiations, Lead Plaintiff has agreed to settle all claims asserted against Statoil USA Onshore Properties Inc. (n/k/a Equinor USA Onshore Properties Inc.) ("Statoil/Equinor") in the above-captioned action ("Action") in exchange for the payment of Seven Million Dollars ($7,000,000) in cash (the "Settlement Amount") deposited into an escrow account for the benefit of the Class.

This Action, in which Lead Plaintiff challenged the way that defendant Statoil/Equinor calculated the royalties it paid to Lead Plaintiff and the Class, presented three primary obstacles to a successful recovery.  First, Lead Plaintiff faced the obstacle of prevailing upon the claims he asserted in the Complaint, itself a significant risk.  Even if he prevailed, however, he faced a second obstacle of litigating the affirmative defenses asserted by Statoil/Equinor – the primary one being that any difference between the index price utilized by Statoil/Equinor and the market

---

[1]  Unless otherwise defined herein, all capitalized terms used herein shall have the meanings provided in the Stipulation of Settlement, which was filed on March 6, 2020 (ECF No. 137).

price actually received was required to be offset by costs, not previously charged but necessarily incurred by Statoil/Equinor's production and sale of Lead Plaintiff's natural gas. The issue of production costs, standing alone, has been the subject of numerous lawsuits, the litigation of which would be as difficult and costly, if not more so, than the litigation of Lead Plaintiff's claim.

The third, and most testing, obstacle – that the vast majority of lessees who are Class Members, including all so-called L-29 lessees, were signatories to arbitration agreements that could potentially preclude them even from participating in this Action and would relegate them to individual arbitrations that were uneconomic to pursue.

Considering these significant risks and expenses posed by continued litigation collectively, the Settlement is a favorable recovery for the Class.

The Settlement provides Class Members the opportunity to participate in a recovery that might otherwise be unavailable. At the same time, it leaves undisturbed the arbitration remedy for any Class Member who wishes to pursue it.

For the reasons set forth herein, Lead Plaintiff submits that the Settlement is fair, reasonable, and adequate to the Class and should be approved by this Court.

## I.  FACTUAL AND PROCEDURAL BACKGROUND OF THE ACTION

The factual and procedural record of this Action is set forth in the Declaration of Francis P. Karam in Support of Lead Plaintiff's Motion for Final Approval of

Class Action Settlement and Plan of Allocation ("Karam Decl."), sworn to on September 25, 2020.

## II.   SETTLEMENT TERMS

The Settlement provides for an all cash payment of $7 million to settle all claims relating to Statoil/Equinor's use of an Index Pricing Methodology on which to base its calculation of Royalties in the Northern Pennsylvania area.  The Class grants a release that allows Statoil/Equinor to continue using the Index Pricing Methodology to calculate Royalties for a period of five years from the Effective Date of the Settlement for certain Royalty Owners.  The release terminates at the conclusion of that five-year period.

For a minority of Royalty Owners with lease language more strongly indicating that use of a Resale Price is required – *i.e.*, those with an L-29 Lease Form (the "L-29 Group") – Statoil/Equinor agrees to base the Royalty on the Resale Price and will no longer use the Index Pricing Methodology going forward.  Upon final approval of the Settlement, Statoil/Equinor will make this change effective retroactively to the first full production month after preliminary approval.  The L-29 Group comprises approximately 7% of the Class by volume.

Proceeds are distributed equally among Class Members except for the L-29 Group, which receives a payment twice other Class Members.

## III.   THE SETTLEMENT WARRANTS THIS COURT'S FINAL APPROVAL

Under Third Circuit law, the settlement of class action litigation is both favored and encouraged.  *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) (noting that the "strong presumption in favor of voluntary settlement agreements" is "especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'"); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged.").

A class action settlement is considered presumptively fair, where, as here, the parties, through capable counsel informed by meaningful discovery, have engaged in arm's-length negotiations, and only a small fraction of the class objected.  *See, e.g.*, *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) ("*GMC Trucks*"); *Alves v. Main*, No. 01-789 (DMC), 2012 WL 6043272, at \*22 (D.N.J. Dec. 4, 2012), *aff'd*, 559 F. App'x 151 (3d Cir. 2014) ("[C]ourts in this Circuit traditionally 'attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class.'") (citations omitted); *see also Manual for Complex Litigation* §30.41, at 237 (3d ed. 1995).

This Action was actively litigated since its inception.  There was significant discovery and a decision by the Court on Defendant's motion to dismiss before

- 4 -

settlement discussions began.    The Settlement resulted from arm's-length negotiations, after significant investigation and litigation, by highly capable counsel who have extensive experience in litigating and settling cases of similar complexity in this area of the law.  *See* Declaration of Francis P. Karam Filed on Behalf of Robbins Geller Rudman & Dowd LLP In Support of Application for Award of Attorneys' Fees and Expenses, Ex. E.  As noted by the court in *City of Sterling Heights General Employees' Retirement System v. Prudential Finance, Inc*., No. 12-5275, 2015 WL 5097883, at *9 (D.N.J. Aug. 31, 2015), it is "clear that [Robbins Geller] is highly qualified to represent the class."  Co-lead Counsel John Harnes has successfully litigated complex representative actions for almost forty years.  *See* Declaration of John F. Harnes in Support of Application for Award of Attorneys' Fees and Expenses, Ex. C.  Douglas Clark of The Clark Law Office is a prominent oil and gas attorney in Northeastern Pennsylvania, specializing in representing landowners. *See* Declaration of Douglas A. Clark Filed on Behalf of the Clark Law Firm, PC In Support of Application for Award of Attorneys' Fees and Expenses, Ex. D. The judgment of Lead Counsel should therefore be afforded substantial weight.

The Settlement is a highly favorable result, is presumptively fair, and clearly satisfies the Rule 23(e)(2) and the *Girsh* factors, as well as the applicable *Prudential* considerations.

Rule 23(e)(2), as amended in December 2018, identifies the following factors to be considered by a district court at final approval:

> (2)    Approval of the Proposal.  If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
>> (A)    the class representatives and class counsel have adequately represented the class;
>>
>> (B)    the proposal was negotiated at arm's length;
>>
>> (C)    the relief provided for the class is adequate, taking into account:
>>
>>> (i)    the costs, risks and delay of trial and appeal;
>>>
>>> (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>>
>>> (iii)    the terms of any proposed award of attorney's fees including timing of payment; and
>>>
>>> (iv)    any agreement required to be identified under Rule 23(e)(3); and
>>
>> (D)    the proposal treats class members equitably relative to each other.

Rule 23(e)(2).  These factors are to be considered alongside of, and largely overlap with, those set forth by the Third Circuit in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975):

> ". . . (1) the complexity, expense and likely duration of the litigation . . . ; (2) the reaction of the class to the settlement . . . ; (3) the stage of the proceedings and the amount of discovery completed . . . ; (4) the risks of establishing liability . . . ; (5) the risks of establishing damages . . . ; (6) the risks of maintaining the class action through the trial . . . ; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . . ; (9) the range of reasonableness of the

settlement fund to a possible recovery in light of all the attendant risks of litigation . . . ."

*Id.* at 157.[2]

An examination of the Rule 23(e) factors, with reference to the *Girsh* factors, favors final approval.

### A. The Settlement Satisfies Each of the Rule 23(e)(2) Factors

#### 1. Lead Plaintiff and Lead Counsel Have Adequately Represented the Class

The first factor of Rule 23(e)(2) considers the adequacy of representation for the Class. *See* Rule 23(e)(2)(A). This factor dovetails into the third *Girsh* factor, which focuses on the stage of the proceedings and the amount of discovery completed. *Girsh*, 521 F.2d at 157; *see also Warfarin*, 391 F.3d at 535 (noting similar considerations for applying presumption of fairness). "[C]ourts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Id.* at 536 (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)); *see also In re ViroPharma, Inc. Sec. Litig.*, No. 12-2714, 2016 WL 312108, at *10 (E.D. Pa. Jan. 25, 2016) (same). Courts in the Third Circuit generally consider two components in assessing adequacy: "(1) the qualifications, experience, and general abilities of the plaintiffs' lawyers to conduct the litigation;

---

[2]   The *Girsh* factors "are a guide and the absence of one or more does not automatically render the settlement unfair." *In re Schering-Plough/Merck Merger Litig.*, No. 09-CV-1099 (DMC), 2010 WL 1257722, at *5 (D.N.J. Mar. 26, 2010) (Cavanaugh, J.).

and (2) whether the interests of lead plaintiffs are sufficiently aligned with the interests of the absentees." *Schuler v. Meds. Co.*, No. 14-1149 (CCC), 2016 WL 3457218, at *4 (D.N.J. June 24, 2016).

Co-Lead Counsel are highly competent and possess substantial experience in prosecuting complex class actions in this Circuit and throughout the country.

Co-Lead Counsel have, over a period of years, vigorously litigated this case. Among other things, they have investigated the claims before filing the complaint, and after starting the Action, responded to motions to dismiss and reviewed thousands of documents provided by Defendants in discovery. Co-Lead Counsel also retained qualified experts to assist them and to verify data provided by the Defendants.[3] Further, Co-Lead Counsel negotiated an exceptional recovery for the Class.

Lead Plaintiff Cheryl Canfield and the executor of her estate, Angelo R. Rescigno Jr., and class representatives, Mary E. and Donald Keith Stine (the "Stines"), have been informed of and approved all significant developments in the case. Their leases are representative of the range of Class leases as relevant to the issues in the case. The Rescigno lease, like the majority of Class leases, does not have L-29 language, but has no arbitration clause. The Stines' lease has L-29

---

[3]    The report of Lead Plaintiff's expert is attached as Ex. A to the Karam Decl.

language, and also has a compulsory arbitration clause, as do most leases in the Class.

Both the knowledge of Lead Plaintiff and his counsel and the proceedings themselves, reached a stage where an intelligent evaluation of the strengths and weaknesses of the Class' claims and the propriety of the Settlement could be made. The Court's holding, in its decision on the motion to dismiss as to the language in the Rescigno lease, provided significant guidance to counsel in their evaluation of the case. Class Counsel, with the assistance of experts, reviewed, over a period of several months, thousands of pages of documents and data that set forth the actual revenues received by Statoil/Equinor, the costs that the Company incurred, the terms of the various leases to which Class Members were parties, and the potential damages incurred by each individual Class Member.

In short, Lead Plaintiff and his counsel, who are experienced in both class actions generally and royalty actions specifically, have adequately represented the Class – they "were well-apprised of the merits of the case before and during negotiation." *DeSantis v. Snap-On Tools Co., LLC*, No. 06-cv-2231 (DMC), 2006 WL 3068584, at *7 (D.N.J. Oct. 27, 2006). This factor weighs in favor of approval.

### 2. The Settlement Negotiations Were Conducted at Arm's Length

The second factor of Rule 23(e)(2) considers whether the Settlement was negotiated at arm's length. *See* Rule 23(e)(2)(B); *see also Warfarin*, 391 F.3d at 535

(citing arm's-length negotiations as a factor for assessing presumption of fairness). The negotiations took place over several months, both in person and by phone. *See* Karam Decl., ¶¶37-44. Each side stressed both factual and legal arguments to persuade the other, before reaching the final compromise number. *Id.*

**3.**    **The Settlement Is Adequate Considering the Costs, Risks, and Delay of Trial and Appeal**

The third factor of Rule 23(e)(2), which overlaps with several of the *Girsh* factors (*i.e.*, factors 1, 4-9), instructs courts to consider the adequacy of the settlement relief in light of the costs, risks, and delay that trial and appeal would inevitably impose. *See* Fed. R. Civ. P. 23(e)(2)(C)(i). This factor supports approval. Further litigation of the case would require Lead Plaintiff to prove not only liability, which would require proof that Statoil/Equinor acted in bad faith, but also damages, accounting for Defendants' counterclaim.

**a.**    **The Costs, Delays and Complexities of Further Litigation**

If not for this Settlement, the case would have continued to be persistently contested by all parties. While Class Counsel have already expended substantial amounts of time and money to reach the point of settlement, further significant time and expenses would be incurred to complete pre-trial proceedings and conduct a trial.

Lead Plaintiff's claim, that Statoil/Equinor improperly calculated the royalty paid, standing alone, would be complex and involve potentially the sham nature of

- 10 -

its intra-company sales, good faith of Statoil/Equinor, the prices achieved by the Company when selling the Class's natural gas, and its efforts to market the gas. Trial on these issues would require the testimony of experts, fact witnesses, and a voluminous documentary record. Even if successful at the trial level, any verdict would be challenged in post-trial motions, and years of appeals.

But proving liability would be just the first step. Because Statoil/Equinor calculated the royalty price utilizing an index rather than actual sales, it only deducted a small percentage of the costs which it had incurred post-production.

If Statoil/Equinor were required to recalculate the revenue that it received, it would also necessarily be required to recalculate the costs that it incurred. In fact, in its Answer Statoil/Equinor asserted, as an affirmative defense, the right to offset such expenses against any recovery by Lead Plaintiff and the Class. Litigation of such offsets would be as difficult, if not more, than litigation of Lead Plaintiff's affirmative claim. It would require expert testimony to address the issue of what costs were necessarily and actually incurred to make the gas marketable, what deductions Statoil/Equinor took from royalty payments, which deductions were necessary to place the gas into a marketable condition, and which costs were incurred to enhance the market value of the gas.

Courts have held favorably to Statoil/Equinor's counterclaim, making the counterclaim a valid risk in the case. In *Potts v. Chesapeake Exploration, L.L.C.*,

- 11 -

760 F.3d 470, 474-75 (5th Cir. 2014), the Fifth Circuit looked to the Texas Supreme Court's opinion in *Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118 (Tex. 1996), to determine how to interpret similar royalty provisions under Texas law.  In *Heritage*, the lease language called for measurement of the market value at the point of sale, the wellhead, and the Fifth Circuit concluded that Chesapeake Exploration "could arrive at the market value at the wellhead by deducting reasonable post-production costs to deliver the gas from the wellhead to the point at which the gas was sold to unaffiliated purchasers." *Chesapeake Exploration*, 760 F.3d at 474-75. In other words, Chesapeake Exploration could take the downstream sale price and deduct the post-production costs to establish the cost at the wellhead. *Id.*

All of these issues would be litigated without regard to the overriding issue presented by this case – whether the presence of arbitration provisions prevents class members from participating in this Action.  Thus, "[i]t is safe to say, in a case of this complexity, the end of that road might be miles and years away." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 837 (W.D. Pa. 1995).

### b.    The Risks of Establishing Liability Weighs in Favor of Final Approval (*Girsh* Factor 4)

"By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *GMC Trucks*, 55 F.3d

at 814.  While Lead Plaintiff is confident in the merits of his case, he also recognized the uncertainties of litigation.

As set forth above, Lead Plaintiff faced a significant risk in achieving any recovery by the Class as he would have to establish his affirmative case.  This includes proving that Statoil/Equinor breached the terms of virtually all leases executed by landowners by calculating the royalty payment based upon an intra-corporate "sale," and that such sale breached the terms of each Lease, breached Statoil/Equinor's duty to market, or breached its implied duty of good faith.

### c.  The Risk of Establishing Damages (*Girsh* Factor 5)

Lead Plaintiff also faced difficulties in proving damages.  First, for several years after it acquired the leases from Chesapeake, the use of index prices resulted in Statoil/Equinor paying a higher price than it actually received when selling to third parties.  Statoil/Equinor's position, that Class Members should not keep the benefit of an index price when it was higher, but be compensated for an index price when lower, has force.  Second, as noted, any damages could be reduced by Statoil/Equinor's asserted affirmative defenses.  Establishing damages did not involve mathematical calculations or the mere application of a formula.  Instead, establishing damages involved litigating factual and legal issues that have been, standing alone, the basis of their own trial.

- 13 -

Assuming that Statoil/Equinor could establish that it was entitled to recover all of the costs that it incurred in connection with its resale of the Class's gas, damages would total approximately $4.5 million, or less than the Settlement Amount. As a consequence, this defense presented a significant risk that Lead Plaintiff's recovery would, at best, be limited.

### d. The Settlement Is More than Adequate in Light of All the Attendant Risks of Litigation

The final two *Girsh* factors are typically considered in tandem, and ask "whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 322 (3d Cir. 1998). "In making this assessment, the Court compares the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, with the amount of the proposed settlement." *In re Par Pharm. Sec. Litig.*, No. 06-3226 (ES), 2013 WL 3930091, at *7 (D.N.J. July 29, 2013) (citing *GMC Trucks*, 55 F.3d at 806). In addition, courts look at whether the Settlement easily falls within "a range of reasonable settlements in light of the best possible recovery (the eighth *Girsh* factor) and . . . in light of all the attendant risks of litigation (the ninth factor)." *In re Merck & Co. Inc. Vytorin ERISA Litig.*, No. 08-CV-285 (DMC), 2010 WL 547613, at *9 (D.N.J. Feb. 9, 2010). In making a "range of reasonableness" assessment, courts do not need a precise estimate of damages.

- 14 -

*See In re New Jersey Tax Sales Certs. Antitrust Litig.*, No. 12-1893 (MAS)(TJB), 2016 WL 5844319, at \*8 (D.N.J. Oct. 3, 2016) (granting final approval where "it is not possible to predict the precise value of damages that [p]laintiffs would recover if successful.").

The Settlement provides for a substantial and certain cash payment of $7 million, plus any accrued interest, for the direct benefit of the Class.  The Settlement in fact represents a recovery of a significant portion of damages in context of the risks that the case presents.  Lead Plaintiff obtained in discovery certain data, verified by Lead Plaintiff's experts, on the possible recovery of the difference between the Index Price (or Average Transfer price) and the re-sale price that Statoil/Equinor received.  The difference between the two, in aggregate for all Class leases, was approximately $58 million, without any offset for uncharged costs.  *See* Karam Decl. Ex. A.  That figure represents the maximum, best case scenario, of what Lead Plaintiff could recover after trial and appeals.  The Settlement recovers 12.08% of that figure.

However, as discussed above based on Statoil/Equinor's interpretation of the Market Enhancement Clause or its equivalent in the Addendum of most Class leases, it asserts an offset defense.  Such offsets, if proven at trial,  total approximately $53.4 million (89% of Lead Plaintiff's claim), leaving Lead Plaintiff with damages of approximately $4.5 million.  The $7 million Settlement represents a 155% recovery

- 15 -

of that figure, which must certainly be considered fair, reasonable and adequate to the Class.

### 4.     The Settlement Satisfies the Remaining Rule 23(e)(2) Factors

The remaining factors of Rule 23(e)(2) advise courts to consider: (i) the effectiveness of the proposed method for distributing relief; (ii) the terms of the proposed attorneys' fees, including the timing of payment; (iii) the existence of any other "agreements"; and (iv) whether the settlement treats class members equitably relative to each other.   Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv); Fed. R. Civ. P. 23(e)(2)(D).  These factors are also readily met.

The method for distributing relief is particularly efficient because Statoil/Equinor, which is already paying royalties to all Class Members, has provided the Settlement Administrator with up to date and accurate information for the payment to Class Members.

The requested award of attorneys' fees of 25% of the Settlement Amount, discussed more fully in Class Counsel's Fee Brief, is well within the range of reasonable fees approved by courts in this Circuit.   *See* Lead Plaintiff's Memorandum of Law In Support of Motion for An Award of Attorneys' Fees, et al., pp. 6-17 filed concurrently herewith.

There are no other agreements or any additional settlement terms, not fully disclosed in the Settlement Notice and public filings.

- 16 -

### B.      The Settlement Satisfies the Remaining *Girsh* Factors

#### 1.      Settlement

To date, no Class Members have objected to the Settlement or Plan of Allocation. "'The second *Girsh* factor "attempts to gauge whether members of the class support the settlement."'" *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 438 (3d Cir. 2016) (citations omitted). "The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement." *Cendant*, 264 F.3d at 235. Here, 13,445 Notices of the Settlement were mailed to class members. *See* Declaration of Ross D. Murray Regarding Notice Dissemination and Requests For Exclusion Received to Date, ¶6. To date, not a single objection has been filed and only 35 class members have opted out.[4] This factor therefore weighs in favor of approval.

#### 2.      Risks of Maintaining Class Action Status Through Trial

Although the risk of establishing liability and, thereafter, establishing damages was considerable, these risks were greatly outweighed by the risk that this Action would not be maintainable as a class action. The vast majority of Class

---

[4]   The objection deadline is October 9, 2020. Should any timely objections be filed, Lead Plaintiff's counsel will address them in their reply memorandum, to be filed no later than October 23, 2020.

Members were parties to arbitration clauses that posed a substantial obstacle to the maintenance of this Action as a class action.  This included all signatories of L-29 leases.[5]  Furthermore, the vast majority of Class Members had economic interests that made the pursuit of individual arbitration not feasible.

It is well-settled that a plaintiff subject to an arbitration provision may not bring a class action in Federal Court.  *E.g.*, *Brown v. TrueBlue, Inc.*, No. 1:10-CV-0514, 2011 WL 5869773 (M.D. Pa. Nov. 22, 2011); *Shubert v. Wells Fargo Auto Fin., Inc.*, No. 08-3754 (NLH), 2008 WL 5451021 (D.N.J. Dec. 31, 2008).  Similarly, signatories to arbitration agreements are barred from participating as Class Members. *King v. Capital One Bank (USA), N.A.*, No. 3:11-CV-00068, 2012 WL 5570624, at *14 (W.D. Va. Nov. 15, 2012) ("[A]llowing Plaintiff to represent individuals bound to pursue their claims in arbitration would render the arbitration clauses totally useless, in contravention of the FAA.").

Thus, courts have repeatedly declined to certify, on commonality and/or typicality grounds, a class that consisted predominantly of members who were parties to an arbitration agreement.  *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 861 (D. Md. 2013) ("[W]here certain members of a class are subject to contracts containing arbitration clauses, while other class members are not, those differences

---

[5]   The principal lease form that did not contain an arbitration provision contained the "sale at the well" language set forth in Lead Plaintiff's lease and addressed by this Court in connection with its decision dismissing most of Lead Plaintiff's claims.

in contractual relationships destroy[ ] the commonality and typicality of the class."); *Johnson v. BLC Lexington, SNF, LLC*, No. 5:19-064-DCR, 2020 WL 3578342 (E.D. Ky. July 1, 2020); *Tan v. Grubhub, Inc.*, No. 15-cv-05128-JSC, 2016 WL 4721439 (N.D. Cal. July 19, 2016).

Indeed, the principal issue among the courts appears not to be whether to exclude parties to an arbitration agreement, but whether to deny certification from the outset or to certify the class conditionally and then, on a more complete record, decertify. *See, e.g.*, *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 234-35 (S.D.N.Y. 2020). In either instance, the risk that the vast majority of Class Members would be excluded from the Class and forced to arbitrate their claims individually was substantial. This, more than any other factor, influenced Lead Plaintiff and his Counsel to compromise the claims herein.

### 3. The Settlement Is Reasonable in Light of the Ability of Defendants to Withstand a Greater Judgment

The seventh *Girsh* factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement." *Cendant*, 264 F.3d at 240. Statoil/Equinor likely could afford to pay an amount greater than $7 million. However, that does not, by itself, militate for or against approval. *See Warfarin*, 391 F.3d at 538 (DuPont's ability to pay more was "irrelevant" to fairness of settlement); *see also GMC Trucks*, 55 F.3d at 818. This factor should be considered neutral.

C. **The Proposed Settlement Satisfies the *Prudential* Considerations**

None of the *Prudential* considerations weighs against Settlement: (1) following extensive briefing on substantive issues, expedited discovery and an arm's-length mediation process, Lead Plaintiff and Class Counsel appropriately understood the merits of the case such that they could knowingly enter into the Settlement; (2) given that there were no objections by the Class and that only 35 persons opted out of the Class, there are no claims by other classes or subclasses related to the underlying facts of this case; (3) there are no known other claimants beyond those represented by the Class; (4) Class Members were accorded the right to opt out of the Settlement, and only 35 chose to do so; (5) as discussed in greater detail, *infra*, Class Counsel's request for an award of attorneys' fees is reasonable; and (6) the Plan of Allocation is fair and reasonable.

IV. **THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION**

The Notice contains the Plan of Allocation, detailing how the Settlement proceeds are to be divided among claiming Class Members.  A trial court has broad discretion in approving a plan of allocation.  *See Sullivan v. DB Indus., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011); *In re Chicken Antitrust Litig.*, 810 F.2d 1017, 1019 (11th Cir. 1987).  The test is simply whether the proposed plan, like the settlement itself, is fair, reasonable, and adequate.  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 132 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *Walsh v. Great Atl.*

*& Pac. Tea Co., Inc.*, 726 F.2d 956, 964 (3d Cir. 1983) ("The court's principal obligation is simply to ensure that the fund distribution is fair and reasonable. . .").

In determining whether a proposed plan is fair, courts look primarily to the opinion of counsel. *See PaineWebber*, 171 F.R.D. at 133 ("[T]he adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information.").

Here, working with their damages expert, Class Counsel developed the Plan of Allocation that reflects, among other things, Lead Plaintiff's and his counsel's assessment of damages that were recoverable in this Action. As a result, the Plan of Allocation will result in a fair distribution of the available proceeds among Class Members. In estimating a greater recovery for L-29 lessees, Class Counsel gave weight both to the strength of such lessees' claims, and to the presence of arbitration provisions. To date, no Class Members have objected to the proposed Plan of Allocation.

## V.   CONCLUSION

For the foregoing reasons, Lead Plaintiff Rescigno, Executor of the Canfield Estate, respectfully requests that the Court enter an order approving the Settlement.

DATED:  September 25, 2020    Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
FRANCIS P. KARAM


*/s/ Francis P. Karam*
FRANCIS P. KARAM
Pennsylvania Bar #77910

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
fkaram@rgrdlaw.com

THE CLARK LAW FIRM
DOUGLAS A. CLARK
Attorney I.D. #76041
1563 Main Street
Peckville, PA 18452
Telephone:  570/307-0702
570/307-0277 (fax)
clarkesquire@comcast.net

LAW OFFICES OF JOHN F. HARNES
PLLC
JOHN F. HARNES (admitted *pro hac vice*)
750 Lexington Avenue, 9th Floor
New York, NY  10022
Telephone:  917/810-8460
jfharnes@harneslaw.com

*Co-Lead Counsel for Lead Plaintiff*

- 22 -

## CERTIFICATION

The undersigned counsel certifies that pursuant to L.R. 7.8, they have used a proportionally spaced Times New Roman typeface, 14 point, and certifies that the total number of words in the brief, inclusive of point headings and footnotes, and exclusive of the caption, table of contents, table of authorities, signature block, is 4,949 words, according to the word count provided by Microsoft Word 2016 word processing software.

DATED:  September 25, 2020

*/s/ Francis P. Karam*
FRANCIS P. KARAM
Pennsylvania Bar #77910

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
fkaram@rgrdlaw.com

## CERTIFICATE OF SERVICE

The undersigned counsel does hereby certify that he has this day caused to be served a true and correct copy of the above and foregoing via electronic mail on all counsel of record registered to receive filings via ECF.

/s/ Francis P. Karam
FRANCIS P. KARAM
Pennsylvania Bar #77910